IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-00351-MR-WCM

PATRICIA CANNON,                        )
                                        )
                    Plaintiff,          )
                                        )          MEMORANDUM AND
v.                                      )          RECOMMENDATION
                                        )
COMMISSIONER OF THE SOCIAL              )
SECURITY ADMINISTRATION,                )
                                        )
                    Defendant.          )
_____        )

This matter is before the court on the parties' cross Motions for Summary
Judgment (Docs. 13, 18), which have been referred to the undersigned
pursuant to 28 U.S.C. § 636 for the entry of a recommendation.

I.      Procedural Background

In January of 2019, Plaintiff Patricia Cannon ("Plaintiff") filed an
application for disability insurance benefits alleging disability beginning on
July 1, 2017. Transcript of the Administrative Record ("AR") 179-180.

On January 15, 2021, following an administrative hearing at which
Plaintiff appeared and testified, an Administrative Law Judge ("ALJ") issued
an unfavorable decision. AR 20-39. That decision is the Commissioner's final
decision for purposes of this action.

## II.   The ALJ's Decision

The ALJ found that Plaintiff had the severe impairments of "spine disorder, fibromyalgia, and hypertension." AR 26. After determining that Plaintiff's impairments did not meet or medically equal one of the listed impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC"):

> to perform light work…subject to the following limitations: (1) no climbing of ladders, ropes, or scaffolds, (2) occasional climbing of ramps or stairs, (3) occasional stooping, crouching, balancing, kneeling, or crawling, and (4) no exposure to dangerous hazards such as unprotected heights or dangerous machinery.

AR 27-28.

Applying this RFC, the ALJ found that Plaintiff had the ability to perform her past relevant work such that Plaintiff was not disabled during the relevant period.  AR 32.

## III.   Plaintiff's Allegations of Error

Plaintiff argues that the ALJ did not develop the administrative record adequately, improperly rejected the opinion of an examining doctor, and failed to evaluate Plaintiff's subjective symptoms appropriately. Additionally, Plaintiff contends that this matter should be remanded because the Commissioner's decision was unconstitutional.

## IV. Standard of Review

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the Commissioner to evaluate each claim for benefits using a five-step sequential analysis. 20 C.F.R. §§ 404.1520; 416.920. The burden rests on the claimant through the first four steps to prove disability. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If the claimant is successful at these steps, then the burden shifts to the Commissioner to prove at step five that the claimant can perform other work. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015); Monroe, 826 F.3d at 180.

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and whether the Commissioner's final decision applies the proper legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Accordingly, the issue before the court is not whether Plaintiff

3

is disabled but, rather, whether the Commissioner's decision that she is not disabled is supported by substantial evidence in the record and based on the correct application of the law.  Id.

## V. Discussion

### A. Development of the Record

"Claimants in social security cases are entitled to a full and fair hearing of their claims." Lewis v. Astrue, No. 3:08cv82, 2008 WL 4889126, at *5 (E.D. Va. Nov. 12, 2008) (citing Sims v. Harris, 631 F.2d 26, 27 (4th Cir. 1981)). "While lack of representation by counsel is not by itself an indication that a hearing was not full and fair, it is settled that where the absence of counsel created clear prejudice or unfairness to the claimant, a remand is proper." Sims, 631 F.2d at 27-28. "It is equally settled that in pro se cases, Administrative Law Judges have a duty to assume a more active role in helping claimants develop the record." Id. at 28 (citing Crider v. Harris, 624 F.2d 15 (4th Cir. 1980); Livingston v. Califano, 614 F.2d 342 (3rd Cir. 1980)); see also Roop v. Saul, No. 5:19-CV-00029-MOC, 2019 WL 6337822, at *4 (W.D.N.C. Nov. 26, 2019).

"As part of this duty, 'the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, being especially diligent in ensuring favorable as well as unfavorable facts and circumstances are elicited.'" Lewis, 2008 WL 4889126, at *5 (quoting Marsh v. Harris, 632

4

F.2d 296 (4th Cir.1980) (some internal quotations omitted)). "Even in cases where the record presented to the Court contains substantial evidence to support the ALJ's determination, the Court may exercise its authority to remand the case for additional fact finding where the ALJ did not fully and conscientiously develop the record." Id.

However, the ALJ "is not required to act as plaintiff's counsel." Packer o/b/o G.G.P v. Saul, No. 3:19-CV-00257, at *8 (S.D. W. Va. Aug. 29, 2019) (citing Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994)). Further, it is generally the plaintiff's responsibility to prove that she is disabled. 20 C.F.R. § 416.912(a) (stating that "[i]n general, you have to prove to us that you are blind or disabled. You must inform us inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled" and that the Commissioner "will consider only impairment(s) you say you have or about which we receive evidence.").

Here, Plaintiff attempted to retain counsel but was unsuccessful. The ALJ offered to continue the hearing to give Plaintiff an additional chance to obtain representation, but Plaintiff decided to participate in the hearing *pro se*. See AR 46. Plaintiff now argues that the absence of counsel was prejudicial to her because the ALJ should have obtained EMG/NCV testing results referred to in other medical records and should have obtained mental health

records and/or ordered a psychological consultative exam to fully consider Plaintiff's anxiety. Doc. 14 at 11-12.

With respect to the EMG/NCV testing, Plaintiff contends that the test results showed "denervation of the left lumbar paraspinal muscles, or weakness, or left lower extremity radiculopathy" which "would provide objective evidence" supporting her claims. Plaintiff asserts that the ALJ failed to acknowledge these results or obtain the testing report and contends that the ALJ improperly concluded that "objective evidence was lacking." Doc. 14 at 11.

However, it does not appear that the ALJ reached such a conclusion. Rather, the ALJ determined that the evidence "from the relevant period" included "objective findings indicat[ing] normal gait at routine exams through October 2020," symptoms controlled with Tylenol, intact balance, and full range of motion. AR 30 (citing AR 1450 (October 10, 2018 exam), AR 1446 (February 20, 2019 exam), AR 1433 (September 10, 2019 exam), AR 1429 (September 25, 2019 exam), AR 1411 (July 28, 2020 exam), AR 1401 (October 28, 2020 exam), AR 1170 (October 21, 2020 exam note reflecting that Plaintiff refused pain stimulator and was "taking Tylenol as needed – stable"). Further, the EMG/NCV testing occurred prior to Plaintiff's alleged disability onset date of July 1, 2017, and Plaintiff does not explain what additional functional limitations the testing – even if it had occurred during the relevant period –

6

would have supported. See e.g., AR 1349 (July 17, 2015 record noting "EMG neg for neuropathy but showed abnormal lumbar paravertebral signal").

With respect to Plaintiff's mental conditions, it does not appear that Plaintiff raised anxiety as a condition limiting her ability to work, either in the materials she submitted to the Commissioner, or during the administrative hearing. See AR 211 (Plaintiff's function report stating that pain limited her ability to work, and that she had fallen several times); AR 202 (January 14, 2019 Disability Report listing "fibromyalgia, migraine, degenerative bone disease, and back-nerve damage" as "all of the physical or mental conditions" limiting Plaintiff's ability to work); AR 68 (hearing testimony). Additionally, while Plaintiff cites medical records referencing mental health treatment, Plaintiff does not explain what functional limitations those records would support. See e.g., AR 1400, 1009, 1104, 411, 618 (complaints of anxiety); AR 1371 (December 9, 2016 exam note reflecting that Plaintiff had seen a psychologist for "depression and other mental health needs. She feels she has good coping skills and continues to function in the setting of chronic pain"). Finally, the hearing testimony itself indicates that the ALJ engaged in a lengthy discussion with Plaintiff regarding her conditions and limitations. See AR 52-68.

Accordingly, the undersigned is not persuaded that the ALJ failed to fully and fairly develop the administrative record, or that Plaintiff was

prejudiced due to her *pro se* status during the administrative hearing. Compare Craig v. Charter, 76 F.3d 585, 591 (4th Cir. 1996) (holding the ALJ discharged heightened duty to develop the record in a *pro se* case where the ALJ thoroughly reviewed the claimant's medical records and questioned the claimant and the claimant's witnesses about all relevant matters, including the claimant's education level, ability to read and write, living conditions, former work, daily activities, and subjective complaints of pain); with Sims, 631 F.2d at 28 (holding that the claimant suffered clear prejudice and unfairness as a result of her lack of counsel where the claimant had difficulty establishing for the record her name, age, and address; the claimant was confused about how to object to medical evidence in her file; the claimant's testimony about her medical problems was directionless and incoherent; the ALJ was unfamiliar with and failed to establish the claimant's former job duties and medical problems; and the ALJ's comments indicated a disinclination to help the claimant fully develop her case).

### B. Consideration of Opinion Evidence

For applications filed on or after March 27, 2017, such as Plaintiff's, the Administration has changed how adjudicators assess medical opinions and prior administrative medical findings. See 82 Fed. Reg. 5844-01; 20 C.F.R. §

404.1520c(a)); 20 C.F.R. § 416.920c(a).[1] Specifically, an ALJ is now required to consider and articulate in the administrative decision how persuasive he or she finds each medical opinion or prior administrative medical finding to be. 20 C.F.R. §§ 404.1520c(a)); 416.920c(a). In that regard, the regulations list numerous factors that are considered, as appropriate: supportability, consistency, relationship with the claimant, specialization, and "other factors" (such as familiarity with other evidence in the claim or an understanding of program policies and evidentiary requirements). Of these factors, "supportability" and "consistency" are the most important. See 20 C.F.R. §§ 404.1520c(a) & (c); 416.920c(a) & (c). "Supportability is an internal check that references objective medical evidence and supporting explanations that come from the source itself. Consistency is an external check that references evidence from other medical and nonmedical sources." Bright v. Saul, No. 1:19CV504, 2020 WL 4483008, at *2 (M.D.N.C. Aug. 4, 2020).[2]

---

[1] The revised regulations define a "prior administrative medical finding" as a "finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review…in your current claim based on their review of the evidence in your case record." See 20 C.F.R. §§ 404.1513(a)(5); 416.913(a)(5). Prior administrative medical findings include state agency consultant findings regarding the severity of a claimant's symptoms, whether a claimant's impairments meet or medically equal a listing, and a claimant's residual functional capacity. Id.

[2] For claims filed prior to March 27, 2017, the regulations require an ALJ to consider all of the listed factors when determining the weight to be afforded to a medical opinion. See 20 C.F.R §§ 404.1527(c); 416.927(c); Arakas v. Commissioner, Social Security Administration, 983 F.3d 83, 107 n. 16 (4th Cir. 2020); Dowling v.

In developing Plaintiff's RFC, the ALJ found that the opinion of state agency consultant Dr. E. Woods was "mostly persuasive." AR 31. Dr. Woods determined that Plaintiff could do "light work, with frequent climbing or stooping, due to abdominal and sciatic nerve pain, and should avoid concentrated exposure to hazards." AR 101-104. Plaintiff's RFC includes limitations consistent with those identified by Dr. Woods, with additional, "somewhat greater" limitations regarding Plaintiff's ability to climb ladders, ropes, scaffolds, ramps/stairs, and perform postural activities. AR 28; 31. The ALJ explained that he included these additional limitations to account for medical records submitted after Dr. Woods' opinion was given, as well as to account for Plaintiff's subjective complaints. AR 31.

In contrast, the ALJ found that the opinion of a consulting neurologist, Dr. Lori Schneider, was not persuasive. AR 31. Dr. Schneider concluded that Plaintiff had "significant difficulties standing and walking," was unable to lift heavy objects "due to chronic back pain," and had "difficulty sitting for long periods of time due to back pain," but had no difficulty handling small objects

---

Commissioner of Social Security Administration, 986 F.3d 377, 385 (4th Cir. 2021) ("The ALJ was required to consider each of the six 20 C.F.R. § 404.1527(c) factors before casting Dr. Gross's opinion aside."). Plaintiff asserts the regulations addressing claims filed after March 27, 2017 similarly require an ALJ to consider all factors when weighing a medical opinion. Plaintiff does not, however, cite authorities that specifically reach this conclusion or explain how an analysis of each factor in 20 C.F.R. §§ 404.1520c(a) & (c) and 416.920c(a) & (c) is mandatory in light of the regulations' direction that the factors are to be considered "as appropriate."

with either hand, speaking, or hearing, and could drive short distances. AR 1126. Additionally, Dr. Schneider stated that a cane was "medically indicated for walking long distances and on uneven surfaces." Id.

Plaintiff argues that the ALJ erred in relying on the opinion of Dr. Woods rather than the opinion of Dr. Schneider.

First, Plaintiff contends that, based on Dr. Schneider's opinion, Plaintiff is precluded from all work because Plaintiff would be absent more than two days per month and that, on many days, Plaintiff would need to lie down for more than one hour per day. Doc. 14 at 14. Plaintiff argues that because Dr. Schneider noted that Plaintiff suffered from migraine headaches seven to eight times per month, such limitations are "implied." Id. Despite including Plaintiff's migraines in the "impression" section of her opinion, however, Dr. Schneider did not include limitations related to Plaintiff's absenteeism or need to lie down.

Additionally, Plaintiff argues that Dr. Schneider's opinion that Plaintiff has "significant" difficulty standing and walking as well as difficulty sitting for long periods of time means that Plaintiff would not be able to do the jobs identified by the ALJ, and that Plaintiff instead requires a "sit-stand option," which would "significantly erode[] both the light and sedentary occupational bases." Doc. 14 at 15. Dr. Schneider, however, did not indicate that Plaintiff needed a "sit-stand option."

11

Further, while the ALJ explained that Dr. Schneider's opinion was supported by "exam findings," he also found the opinion was "overly reliant on the [Plaintiff's] own subjective complaints, and is not consistent with the overall record, which frequently notes normal gait and strength without use of an ambulatory aide, as discussed above, and supports finding limitations to light work." AR 31 (citing AR 211-218 (Adult Function Report); AR 1401, 1411, 1429, 1433, 1446, 1450 (medical records reflecting normal gait and station, no lower extremity edema, and, according to the ALJ, conservative care for fibromyalgia)); see also Chipley v. Kijakazi, No. 5:21-CV-00101-KDB, 2022 WL 2758612, at *3 (W.D.N.C. July 14, 2022) ("an ALJ 'may ... discount medical opinions for excessive reliance on a claimant's subjective statements.'") (quoting Thompson v. Berryhill, No. 4:18-CV-133-FL, 2019 WL 2980030, at *6 (E.D.N.C. Apr. 22, 2019) (citing Mastro v. Apfel, 270 F.3d 171,178 (4th Cir. 2001)), report and recommendation adopted sub nom. Thompson v. Saul, No. 4:18-CV-133-FL, 2019 WL 2932736 (E.D.N.C. July 8, 2019)).

Finally, to the extent Plaintiff argues that the ALJ improperly relied on the opinion of Dr. Woods because Dr. Woods did not have the benefit of later-obtained medical records, state agency consultants are not required to review the entire record before rendering their opinions. See Hunter v. Saul, No. 1:19CV912, 2020 WL 6582497 at *9 (M.D.N.C. Nov. 10, 2020) ("State agency consultants provide RFC assessments at the initial and reconsideration levels

12

of the claims process and thus necessarily offer their opinions prior to completion of the record"). An ALJ may rely on the opinions of state agency consultants when those opinions are consistent with the evidence, including evidence that post-dates the opinions. See Tanner v. Commissioner of Social Security, 602 Fed. Appx. 95, 101 (4th Cir. 2015) (unpubl.) ("'the testimony of a nonexamining physician can be relied upon when it is consistent with the record'") (quoting Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986)); see also Thacker v. Astrue, No. 3:11CV246, 2011 WL 7154218, at *6 (W.D.N.C. Nov. 28, 2011) ("The fact that the state agency physician did not have access to the entire evidentiary record — because the record was incomplete at the time of the assessment — is inconsequential as ... there is nothing in the additional medical evidence subsequently submitted by Plaintiff to indicate that she possessed limitations beyond [the state agency consultant's RFC]") (internal citation omitted), recommendation adopted, 2012 WL 380052 (W.D.N.C. Feb. 6, 2012). Here, as noted above, it appears the ALJ considered Plaintiff's later medical records and subjective complaints and that he included additional functional limitations in Plaintiff's RFC.

In sum, the ALJ explained the basis for his treatment of the opinions of Dr. Woods and Dr. Schneider adequately and did not err in relying on the opinion of Dr. Woods when developing Plaintiff's RFC. See Petty v. Saul, No. 1:19-cv-00012-FDW, 2020 WL 1441436, at *4 (W.D.N.C. March 20, 2020) ("The

ALJ considered Dr. Ocloo's opinion in light of the rest of the record and decided it warranted 'some' weight. The ALJ provided substantial evidence for her weight determination; therefore, the Court will not disturb the ALJ's decision").

### C. Plaintiff's Subjective Symptoms

When evaluating a claimant's symptoms, an ALJ must use the two-step framework set forth in 20 C.F.R. §§ 404.1529 and/or 416.929 and SSR 16-3p, 2016 WL 1119029 (March 16, 2016).

First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms. See 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3.

Second, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled. See 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4. The Fourth Circuit has consistently recognized that "[a]t this step, objective evidence is not required to find the claimant disabled." Arakas v. Commissioner, Social Security Administration, 983 F.3d 83, 95 (4th Cir. 2020). In evaluating the intensity, persistence and limiting effects of an individual's symptoms, an ALJ is to consider factors such as the individual's medical history, treatment history, and daily activities. SSR 16-3p; Titles II

and XVI: Evaluation of Symptoms in Disability Claims, 2016 WL 1119029 (Mar. 16, 2016) (citing 20 C.F.R. §§ 404.1529(c), 416.929(c)).

### 1.    Fibromyalgia

In cases involving fibromyalgia, the Fourth Circuit has recognized that "'symptoms are entirely subjective,' with the exception of trigger-point evidence" and that physical examinations of patients with fibromyalgia will usually yield normal results. Arakas, 983 F.3d at 95 (citing Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996); Green-Younger v. Barnhart, 335 F.3d 99, 108–09 (2d Cir. 2003)). Accordingly, "ALJs may not rely on objective medical evidence (or the lack thereof)—*even as just one of multiple factors*—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence. Objective indicators such as normal clinical and laboratory results simply have no relevance to the severity, persistence, or limiting effects of a claimant's fibromyalgia, based on the current medical understanding of the disease." Id. at 97 (emphasis added); see also India G. v. Kijakazi, No. DLB-20-1704, 2021 WL 3930430, at *3 (D. Md. Sept. 1, 2021) ("Phrased differently, the Fourth Circuit noted that normal, objective clinical and laboratory results are not inconsistent with allegations of disabling pain. Thus, after *Arakas*, the use of that objective medical evidence to discount the plaintiff's complaints of the disease's limiting effects is improper in the Fourth Circuit").

15

Here, the ALJ determined that Plaintiff had the severe impairment of fibromyalgia. AR 26. In developing Plaintiff's RFC, the ALJ explained that with respect to Plaintiff's fibromyalgia, "during the relevant period the evidence does not indicate more than conservative care," that Plaintiff "was referred to a spine specialist but did not go" and "refused a stimulator from pain management in 2016," and that Plaintiff's current symptoms "are at times controlled with Tylenol…." AR 30; see also id. (discussing Plaintiff's testimony that she "mostly uses conservative care for back pain such as patches, Aleve, and a back brace, but avoids using pain medication"). The ALJ also discussed Plaintiff's "many typical activities of daily living" such as helping her daughter with her daughter's newborn child, helping care for pets, preparing simple meals, doing laundry, walking, driving, shopping in stores for long periods of time, and reading or watching movies. AR 30 (discussing Adult Function Report (AR 211-218) and Plaintiff's testimony). Accordingly, the undersigned is not persuaded that the ALJ improperly discounted Plaintiff's subjective symptoms stemming from fibromyalgia.

### 2. Other Subjective Complaints

Plaintiff also argues that the ALJ failed to consider appropriately her absenteeism and need to lie down and should have obtained EMG/NCV results. Doc. 14 at 23-24. As discussed above, the undersigned does not find these arguments persuasive.

16

Additionally, Plaintiff contends that the ALJ's statement that Plaintiff's blood pressure "appears to be poorly controlled during periods of poor compliance," see AR 30, shows he did not acknowledge contrary evidence, including that her medical records indicate that her blood pressure remained high despite compliance with her medication regime. Doc. 14 at 24-25.

The ALJ, though, provided substantial evidence to support his finding. See AR 30 (citing AR 1181 (medical record indicating that Plaintiff's blood pressure was "not controlled" and that Plaintiff was "reluctant to start new med" and would "continue to monitor BPs at home") and AR 1173 (medical record indicating Plaintiff was doing well on her medications prescribed for hypertension, and that Plaintiff would "continue medications, follow bp closely")). Further, it appears that the ALJ included additional limitations in Plaintiff's RFC to account for her complaints related to balance. See AR 31 (explaining that Plaintiff's later medical records, as well as her hearing testimony, supported limitations regarding the ability to climb ladders, ropes, scaffolds, ramps/stairs, and not work around dangerous hazards (such as unprotected heights or dangerous machinery)).

### D. Plaintiff's Constitutional Challenge

42 U.S.C. § 902(a)(3) provides that "[a]n individual serving in the office of Commissioner [of the Social Security Administration] may be removed from

office only pursuant to a finding by the President of neglect of duty or malfeasance in office."

Citing <u>Collins v. Yellen</u>, 141 S.Ct. 1761, 210 L.Ed.2d 432 (2021), <u>Seila Law, LLC v. Consumer Financial Protection Bureau</u>, 140 S.Ct. 2183, 207 L.Ed.2d 494 (2020), and <u>United States v. Arthrex, Inc.</u>, 141 S.Ct. 1970, 210 L.Ed.2d 268 (2021), Plaintiff argues that the ALJ's decision is void because it "was not reviewable by anyone subject to Presidential at-will removal." Doc. 14 at 25; <u>see also</u> 2021 WL 2981542 (Office of Legal Counsel Memorandum Opinion which concluded that the statutory removal restriction in 42 U.S.C. § 902(a)(3) is unenforceable).

However, arguments of this nature have been rejected by numerous courts. <u>See</u> <u>e.g.</u>, <u>Murray v. Kijakazi</u>, No. 3:21-cv-489-MOC, 2022 WL 2252603, at *5 n. 1 (W.D.N.C. June 22, 2022) (explaining that "[t]his Court and many others have repeatedly rejected Social Security plaintiffs' claims that ALJ's decisions are constitutionally defective based on a separation of powers argument," collecting cases, and stating that "the Court is not aware of <u>any</u> case holding to the contrary….") (emphasis in <u>Murray</u>); <u>Osborne v. Kijakazi</u>, 5:21-cv-9-MOC, 2021 WL 5890668, at *3 (W.N.D.C. Dec. 13, 2021) ("The <u>Collins</u> Court reasoned that the relevant agency officials were 'properly appointed' pursuant to a statute that exhibited 'no constitutional defect in the ... method of appointment' and that 'the unlawfulness of [a] removal provision' does not

strip [an official] of the power to undertake the other responsibilities of his office[.]'"); Chuenanan v. Commissioner of Social Security, No. 1:21-cv-00086-RJC, 2022 WL 1416421 (W.D.N.C. May 4, 2022); Watkins v. Kijakazi, 1:20-cv-00380-MR-WCM, 2022 WL 1101760 (W.D.N.C. Jan. 21, 2022), recommendation adopted, 2022 WL 822166 (W.D.N.C. March 18, 2022); see also Helms v. Commissioner of Social Security, No. 3:20-cv-589-MOC, 2021 WL 5710096, at *2 (W.D.N.C. Dec. 1, 2021) ("The Court finds that it is implausible that the Commissioner's protection from removal from office, whether constitutional or not, could have affected ALJ Goodson's decision or any other aspect of the administrative litigation in a material way"); Hutchens v. Kijakazi, No. 1:20CV1124, 2021 WL 5834409, at *11 (M.D.N.C. Dec. 9, 2021), recommendation adopted (M.D.N.C. Jan. 5, 2022) ("Unlike Appointments Clause cases, where courts have found the very authority under which a government official has acted unconstitutional...the unconstitutional removal provision at issue here did not impact then-Commissioner Saul's ability to carry out the duties of his office") (internal citations omitted); Brand v. Kijakazi, No. 2:20-cv-02219-NJK, ---F.Supp.3d---, 2021 WL 5868131, at *6 (D. Nev. Dec. 10, 2021) (rejecting plaintiff's argument that President Biden's statements regarding Saul's firing evidenced a "strong possibility" of harm as "too conclusory, speculative, and attenuated").

## VI.    Recommendation

The undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Doc. 13) be **DENIED**, and that the Commissioner's Motion for Summary Judgment (Doc. 18) be **GRANTED.**

Signed: August 26, 2022

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See <u>Thomas v. Arn</u>, 474 U.S. 140, 140 (1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984).